IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROKENBERT CALVIN MARTIN | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:14cv666-WKW |
| | ) | (WO) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Before the court is petitioner Rokenbert Calvin Martin's ("Martin") motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody.  Doc. No. 1.[1]

## I.  INTRODUCTION

On March 8, 2012, Martin pled guilty under a plea agreement to one count of conspiracy to commit mail fraud in violation of 18 U.S.C. § 1349, one count of aiding and abetting mail fraud in violation of 18 U.SC. §§ 1341 and 2, one count of aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1), and one count of possession of a stolen motor vehicle in violation of 18 U.S.C. § 2313(a).  The district court sentenced Martin on November 13, 2012, to 87 months in prison.  Martin was also sentenced to three years on supervised release and ordered to pay restitution in the amount of $170,503.31 to Alfa Insurance, Motors Insurance Corporation, and the Hertz Corporation.

Martin appealed, raising these claims:

1.  The district court erred in failing to reduce his sentence for acceptance of responsibility.

---

[1] Unless otherwise indicated, references to document numbers ("Doc. No.") are to those assigned by the Clerk of Court in this action.  All page references are to those assigned by CM/ECF.

2.      The district court erred in failing to address pending objections to the Presentence Investigation Report ("PSI").

3.      The district court plainly erred in its determination of the amount of intended loss.

4.      The district court plainly erred in its application of a sophisticated means enhancement.

5.      His counsel was ineffective at the sentencing hearing.

Doc. No. 11-16 at 39–57.

On December 11, 2013, the Eleventh Circuit Court of Appeals entered an opinion affirming Martin's convictions and sentence. *Martin v. United States*, 549 F. App'x 888 (11th Cir. 2013). The appellate court held that Martin's claims regarding the district court's denial of a reduction for acceptance of responsibility and the district court's failure to address objections to the PSI were barred under the sentence appeal waiver in Martin's plea agreement. *Id.* at 889–90. The appellate court evaluated Martin's claims regarding the intended loss amount and the sophisticated means enhancement, and found no plain error. *Id.* at 890. The appellate court found that the record was insufficiently developed to consider the merits of Martin's claims of ineffective assistance of counsel. *Id.* at 890–91. Martin did not seek certiorari review by the Supreme Court.

On July 1, 2014, Martin filed this motion for relief under 28 U.S.C. § 2255, presenting claims that his counsel rendered ineffective assistance in the following ways:

1.      Trial counsel did not adequately communicate with him during plea negotiations and before entry of his guilty plea.

2.      Trial counsel did not attempt to obtain a more favorable plea agreement, preventing him from making an informed and voluntary decision to plead guilty.

3.      Trial counsel did not adequately review discovery or research, file, and litigate pretrial motions, including a motion to suppress.

2

4.     Sentencing counsel did not argue he should receive a three-level reduction in his offense level based on acceptance of responsibility.

5.     Sentencing counsel did not file motions for downward departure and a variance.

6.     Sentencing counsel did not challenge the 12-level enhancement to his offense level based on the loss amount.

Doc. No. 1 at 4–7, 19–56.

Martin later amended the § 2255 motion to add a claim that his sentencing counsel rendered ineffective assistance by failing to object to the restitution amount ordered, because one of the automobiles stolen during the conspiracy was recovered by its owner, the Hertz Corporation, and therefore the value of the vehicle should not have been included in the restitution amount he was ordered to pay.  Doc. No. 26.  Later still, Martin amended the § 2255 motion to add a claim that his sentencing counsel was ineffective for failing to object to the leadership role enhancement applied to his sentence.  Doc. No. 35.

After considering the parties' submissions, the record, and the applicable law, the court concludes that the § 2255 motion should be denied without an evidentiary hearing.  Rule 8(a), *Rules Governing Section 2255 Proceedings in the United States District Courts.*  Although the government concedes the merit of Martin's amended claim that his sentencing counsel was ineffective for failing to object to the restitution amount ordered, a § 2255 motion is not the proper vehicle to challenge the restitution portion of a sentence because a restitution reduction does not constitute release from custody.

## II.   DISCUSSION

### A.   General Standard of Review

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments under 28 U.S.C. § 2255 are limited.  A prisoner is entitled to relief under

§ 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.  *See* 28 U.S.C. § 2255; *United States v. Phillips*, 225 F.3d 1198, 1199 (11th Cir. 2000); *United States v. Walker*, 198 F.3d 811, 813 n.5 (11th Cir. 1999). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).

## B.   Claims of Ineffective Assistance of Counsel

A claim of ineffective assistance of counsel is evaluated against the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 689.  Second, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.  *See Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000).

Scrutiny of counsel's performance is "highly deferential," and the court indulges a "strong presumption" that counsel's performance was reasonable. *Chandler*, 218 F.3d at 1314 (internal quotation marks omitted).  The court will "avoid second-guessing counsel's performance:  It does not follow that any counsel who takes an approach [the court] would not have chosen is guilty of rendering ineffective assistance." *Id*.  (internal quotation marks and brackets omitted).  "Given the strong presumption in favor of competence, the petitioner's burden of persuasion—though the presumption is not insurmountable—is a heavy one." *Id*.

4

As noted, under the prejudice component of *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The prejudice prong does not focus only on the outcome; rather, to establish prejudice, the petitioner must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993) ("[A]n analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective."). "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Id.* at 372.

Unless a petitioner satisfies the showings required on both prongs of the *Strickland* inquiry, relief should be denied. *Strickland*, 466 U.S. at 687. Once a court decides that one of the requisite showings has not been made, it need not decide whether the other one has been. *Id.* at 697; *Duren v. Hopper*, 161 F.3d 655, 660 (11th Cir. 1998).

### 1. *Failure to Communicate Prior to Entry of Plea*

Martin claims that his trial counsel, Donnie W. Bethel, rendered ineffective assistance of counsel by failing to adequately communicate with him during plea negotiations and before entry of his guilty plea.[2] Doc. No. 1 at 4, 19–23. In particular, Martin argues that Bethel's purported failure to communicate with him left him unaware of the way the Sentencing Guidelines would apply in his case and led to "several crippling waivers" in his plea agreement. *Id.*

---

[2] In an affidavit filed with this court, Bethel, an attorney with the Federal Defender's Office, avers that "the defense team discussed the case at length with Petitioner…." Doc. No. 6 at 1.

Martin's claim is refuted by the record, including his sworn statements in open court and his representations in the written plea agreement he signed.  At the change of plea hearing, Martin affirmed to the court that he agreed to enter his guilty plea "after fully discussing this case with [his] attorney."  Doc. No. 11-4 at 3.  In addition, Martin averred that he had discussed the indictment and the charges with Bethel and that he was "fully satisfied" with the representation and advice given to him by Bethel.  *Id*. at 4.  Martin also affirmed, when asked by the court, that he had read and discussed the plea agreement with Bethel and that he understood the terms of the plea agreement.  *Id.* at 4–5.  In that plea agreement, Martin indicated that he accepted its terms after reading it, and that he was satisfied Bethel had "represented [his] interests in this matter competently and effectively."  Doc. No. 11-3 at 14.  Paragraph 15.k. of the plea agreement provided: "This Plea Agreement is the result of prior discussions between the attorney for the Government and the attorneys for the defendant.  Those discussions were all conducted with the defendant's authorization, knowledge, and consent."  *Id*. at 12.  Also at the change of plea hearing, Martin affirmed that he had discussed with Bethel how the Sentencing Guidelines would apply in his case; how the court could not determine his guideline range until after the PSI was prepared by the probation officer; how Martin and the government could challenge the PSI once it was prepared; how, after the initial advisory guidelines range was determined, the court had the authority in some circumstances to depart upward or downward from that range; and how the sentence ultimately imposed might differ from any estimate given to him by his counsel.  Doc. No. 11-4 at 9.

"While a guilty plea taken in open court is not invulnerable to collateral attack in a post-conviction proceeding, the defendant's representations during the plea-taking carry a strong presumption of verity and pose a 'formidable barrier in any subsequent collateral proceedings.'"

*Voytik v. United States*, 778 F.2d 1306, 1308 (8th Cir. 1985) (citations omitted).   "Solemn statements in open court carry a strong presumption of veracity."  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).   Here, Martin would have the court ignore his sworn statements at the change of plea hearing and his affirmations in the signed plea agreement.   However, he fails to overcome the presumption that his statements and affirmations were true.   As such, he fails to demonstrate that Bethel did not adequately communicate with him during plea negotiations and before he entered his guilty plea.   Consequently, he has not shown deficient performance by Bethel.   Moreover, he wholly fails to demonstrate prejudice, because he has not shown that but for any alleged failures in communication by Bethel, he would have been offered a better plea deal, *see Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 133 (2012),[3] or he would have opted to go to trial instead of pleading guilty, *see Hill v. Lockhart*, 474 U.S. 52 (1985).[4]

For the reasons indicated, Martin is entitled to no relief on this claim of ineffective assistance of counsel.

---

[3] In *Lafler* and *Frye*, the Supreme Court clarified that the Sixth Amendment right to the effective assistance of counsel extends to the negotiation and consideration of plea offers.  The Supreme Court concluded that, in order to establish prejudice in this context, a defendant must show a reasonable probability that but for counsel's deficient performance: (1) "the plea offer would been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances)"; (2) "the court would have accepted its terms"; and (3) "the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed."  *Lafler*, 566 U.S. at 164; *see Frye*, 566 U.S. at 146–47.

[4] The *Strickland* standard for evaluating claims of ineffective assistance of counsel was held applicable to guilty pleas in *Hill*.  A petitioner alleging ineffective assistance in this context must establish that counsel's performance was deficient (i.e., professionally unreasonable) and that counsel's deficient performance "affected the outcome of the plea process."  *Hill*, 474 U.S. at 59.  To establish prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would ... have pleaded [not] guilty and would ... have insisted on going to trial."  *Id.* A mere allegation by a defendant that he would have insisted on going to trial but for counsel's errors is insufficient to establish prejudice; rather, the court will look to the factual circumstances surrounding the plea to determine whether the defendant would have proceeded to trial.  *See Miller v. Champion*, 262 F.3d 1066, 1072 (10th Cir. 2001); *United States v. Arvantis*, 902 F.2d 489, 494 (7th Cir. 1990); *see also Holmes v. United States*, 876 F.2d 1545 (11th Cir. 1989) (*Hill* does not require a hearing merely because a defendant asserts a claim of ineffectiveness of counsel when the record affirmatively contradicts the allegations).  The court notes that Martin "has not proffered even a hint of any defense, much less a suggestion that he could have succeeded had he gone to trial."  *United States v. Farley*, 72 F.3d 158, 165 (D.C. Cir. 1995).

### 2.   Failure to Obtain More Favorable Plea Agreement

Martin contends Bethel rendered ineffective assistance of counsel by failing to obtain a more favorable plea agreement, which he says prevented him from making an informed and voluntary decision to plead guilty.  Doc. No. 1 at 4, 24–38.

Concerning this claim, Bethel states:

> I … explained Petitioner's options concerning going to trial or negotiating a guilty plea.  Petitioner authorized me to negotiate a plea agreement on his behalf.… Petitioner alleges that I was ineffective regarding plea negotiations. Plea negotiations in this case were lengthy and detailed.  I negotiated an agreement that I believed was in Petitioner's best interest to accept.  Petitioner's decision to accept the plea agreement was his own.

Doc. No. 6 at 1–2.

Martin's sworn statements at the change of plea hearing and his affirmations in the signed plea agreement, discussed above in the previous issue, belie his current suggestion that he entered his guilty plea unknowingly and involuntarily.  Further, Martin cannot establish prejudice, because he fails to show a reasonable probability that, but for the purported errors of Bethel, a more favorable plea offer would have been made.  *See Lafler*, 566 U.S. at 164.  Martin's subjective belief that the government's actual plea offer was not the best he could do fails to create an inference that another, more favorable, plea offer existed or was obtainable.  Indeed, there is no evidence that a more favorable plea agreement was obtainable.  Because Martin fails to demonstrate prejudice from Bethel's failure to obtain a more favorable plea agreement, he is entitled to no relief on this claim of ineffective assistance of counsel.

### 3.   Failure to Review Discovery or Pursue Pretrial Motions

Martin contends Bethel was ineffective for failing to adequately review discovery or research, file, and litigate pretrial motions, including a motion to suppress.  Doc. No. 1 at 4, 38–43.

Bethel avers in his affidavit:

> Petitioner alleges that I failed to adequately investigate, research and prepare his case for trial, including failing to raise any pretrial motions. … [T]he defense team … diligently followed up all investigatory leads and researched all legal issues that were identified.  I filed all pretrial motions that I thought were reasonably raised by the evidence.

Doc. No. 6 at 1.

Martin fails to establish prejudice with this claim.  He points to no discovery material or other matters allegedly not reviewed by Bethel that would have supported a defense in his case. Further, he identifies no unfiled pretrial motions with a reasonable likelihood of success.  More to the point, he does not identify what search was conducted in his case that should have been challenged through a motion to suppress, nor what evidence would have been suppressed because of a violation of his Fourth Amendment rights.  A petitioner arguing that counsel was ineffective for failing to file or pursue a suppression motion must establish that he was prejudiced by counsel's failure.  *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000); *Iron Wing v. United States*, 34 F.3d 662, 665 (8th Cir. 1994).  Martin's failure to demonstrate any prejudice precludes his obtaining relief on this claim of ineffective assistance of counsel.

### 4.   Failure to Argue for Three-Level Reduction for Acceptance of Responsibility

Martin contends that his sentencing counsel, James McCauley Smith, was ineffective for failing to argue he should receive a three-level reduction in his offense level based on acceptance of responsibility.[5]  Doc. No. 1 at 7, 52–53.

In the plea agreement, the government agreed, among other things, that a two-level reduction in Martin's applicable offense level was appropriate under U.S.S.G. § 3E1.1(a) for his

---

[5] Smith was appointed to represent Martin at sentencing after Bethel was allowed to withdraw as his attorney.  *See* Doc. Nos. 11-6, 11-10, and 11-11.

acceptance of responsibility if he did "not obstruct justice or otherwise fail to accept responsibility for the offense conduct," and further agreed to move for a third-level reduction under U.S.S.G. § 3E1.1(b) if Martin continued to accept responsibility and committed no further crimes.  Doc. No. 11-3 at 4.

At sentencing, the government informed the district court that, although it believed Martin had breached the plea agreement by engaging in additional crimes after pleading guilty and by making material misrepresentations concerning his culpability in a letter he sent to the district court,[6] it was still willing to recommend that Martin receive a two-level reduction for acceptance of responsibility but was unwilling to recommend he receive a third level of reduction.[7]  Doc. No. 11-14 at 8–9.  Citing Martin's post-plea conduct, the district court denied Martin any reduction based on acceptance of responsibility.  *Id.* at 17.

Here, there was no basis for Smith to argue for Martin to receive a three-level reduction based on acceptance of responsibility, because Martin failed to accept responsibility when he committed additional new crimes and submitted his falsehood-laden letter to the district court. Martin demonstrates neither deficient performance by counsel nor any resulting prejudice.  He is entitled to no relief on this claim.

### 5.   *Failure to File Motions for Downward Departure and Variance*

Martin claims Smith was ineffective for failing to file motions for additional downward departure and for a variance.  Doc. No. 1 at 5, 43–51.

---

[6] At the sentencing hearing, the government outlined the false statements made by Martin in his letter to the district court.  *See* Doc. No. 11-14 at 5–8.

[7] The government also indicated that, despite Martin's post-plea conduct and its belief that Martin had not cooperated fully as contemplated by the plea agreement, it was still willing to recommend that Martin receive a three-level downward departure under U.S.S.G. § 5K1.1 based on substantial assistance—one level more than the two-level reduction negotiated at the time of the plea agreement.  *See* Doc. No. 11-14 at 10.  The district court granted a three-level § 5K1.1 departure.  *Id*. at 15.

Martin fails to identify a plausible basis for obtaining an additional downward departure or variance in his case, particularly in light of his commission of additional similar crimes after pleading guilty, his failure to accept responsibility, and his material misrepresentations in the letter he sent to the district court.  Indeed, Martin does not identify a specific additional downward departure that Smith should have sought for him.  And although he suggests that a variance might have been sought on grounds his case was "outside the Heartland of of the typical fraud cases" (Doc. No. 1 at 50–51), Martin points to no aspect of his case setting it apart from the typical cases embodying the sort of conduct to which the Sentencing Guidelines are meant to apply.[8]  That is, he points to no "characteristics of the crime, the defendant, or the victims that are not accounted for by the Guidelines—that take the case out of the "heartland" of cases the Sentencing Commission drew on in prescribing the applicable Guidelines range."  *United States v. Hayes*, 762 F.3d 1300, 1321 (11th Cir. 2014).  The record reflects that before Bethel withdrew from Martin's case, he requested that Martin receive a variance below the applicable guideline range, specifically asking for a 24-month sentence.  *See* Doc. No. 11-6 at 6–7.  The variance was not granted.

Here, Martin's cursory assertions establish neither deficient performance by Smith nor resulting prejudice.  Consequently, Martin is entitled to no relief on his claim that Smith was ineffective for failing to seek additional downward departures and a variance at sentencing.

### 6.  *Failure to Challenge Loss Amount*

Martin contends that Smith was ineffective for failing to challenge the 12-level enhancement applied to his offense level based on the loss amount.  Doc. No. 1 at 7, 54–55.

---

[8] *See* U.S.S.G. § 1A1.1 editorial note, ch. 1, pt. A, introductory cmt. n.4(b) ("The Commission intends the sentencing courts to treat each guideline as carving out a 'heartland,' a set of typical cases embodying the conduct that each guideline describes."); *Rita v. United States*, 551 U.S. 338, 351 (2007) ("[The sentencing judge] may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because ... the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply.").

The district court accepted the U.S. Probation Office's determination that the loss attributable to Martin for his criminal conduct was $309,417.32, based on Martin's role in a large-scale car theft operation in which he used a variety of methods to secure high-end automobiles (frequently from out of state), switch the vehicle identification numbers, and sell the stolen cars. *See* Doc. No. 11-5 at 23, ¶ 73.  Applying § 2B1.1(b)(1) of the Sentencing Guidelines, the court imposed a 12-level enhancement to Martin's offense level.[9]  *See* U.S.S.G. § 2B1.1(b)(1)(G), (H) (providing for 12-level specific offense characteristic enhancement where the loss was more than $200,000 but less than $400,000).

Application notes for U.S.S.G. § 2B1.1 clarify that, with respect to economic fraud offenses, "loss is the greater of actual loss or intended loss."  U.S.S.G. § 2B1.1, cmt. n.3(A). "Actual loss" is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense."  *Id.*, cmt. n.3(A)(i).  "Intended loss," on the other hand, means "the pecuniary harm that was intended to result from the offense," including pecuniary harm "that would have been impossible or unlikely to occur."[10]  *Id.*, cmt. n.3(A)(ii).

Here, the government's evidence showed that Martin, in concert with others, obtained numerous stolen vehicles with a total value of $309,417.32.  The pecuniary harm intended by

---

[9] Under U.S.S.G. § 2B1.1(b)(1), the offense level for a defendant convicted of certain economic fraud offenses is subject to a specific offense characteristic enhancement if the loss from the criminal conduct exceeded $5,000, with the extent of the enhancement determined by the amount of the loss.  U.S.S.G. § 2B1.1(b)(1).  The Sentencing Guidelines direct the district court to consider a defendant's relevant conduct, not merely the charged conduct, in calculating loss.  *United States v. Foley*, 508 F.3d 627, 633 (11th Cir. 2007).  *See* U.S.S.G. § 1B1.3(a)(1)(A) & (B) (relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity").

[10] In the context of fraud offenses, sentencing based on intended loss is appropriate even where no actual loss occurred.  *United States v. Menichino*, 989 F.2d 438, 442 (11th Cir. 1993); *see United States v. Willis*, 560 F.3d 1246, 1250-51 (11th Cir. 2011) (finding that intended loss included defendant's fraudulent claims to FEMA that were not paid).

Martin, then, was $309,417.32.  *See* U.S.S.G. § 2B1.1, cmt. n.3(A)(ii).  Because the intended loss from the scheme was more than $200,000 but less than $400,000, the district court properly applied the 12-level enhancement under § 2B1.1(b)(1) to Martin.  *See* U.S.S.G. § 2B1.1(b)(1)(G), (H).

Although Martin maintains that Smith was ineffective for failing to object to the § 2B1.1(b)(1) enhancement, he neither demonstrates that the district court's finding was erroneous nor identifies a plausible argument that Smith might have presented that was reasonably likely to change the district court's loss determination.  He sets forth no particular evidence that Smith should have offered in opposing the loss determination and points to no facts indicating that the loss determination was inaccurate.[11]  Failing to show either deficient performance by counsel or

---

[11] On direct appeal, Martin argued that the district court erred in its determination of the amount of loss.  The Eleventh Circuit evaluated the claim and found no plain error:

> [W]e reject Martin's claim[ ] concerning the intended loss amount.  The Guidelines do not require the district court to make a precise fraud loss determination, but only require it to make a reasonable estimate of the loss, given the available information.  *United States v. Barrington*, 648 F.3d 1178, 1197 (11th Cir.2011), cert. denied, ___ U.S. ___, 132 S.Ct. 1066, 181 L.Ed.2d 781 (2012).  The loss calculation must be supported with reliable and specific evidence.  *United States v. Munoz*, 430 F.3d 1357, 1370 (11th Cir.2005).  According to the Guidelines Commentary, "loss" is the greater of "actual loss" or "intended loss."  U.S.S.G. § 2B1.1, comment. n. 3(A); *United States v. Bradley*, 644 F.3d 1213, 1289 (11th Cir. 2011).  "Intended loss" is the "pecuniary harm that was intended to result from the offense," even if impossible or unlikely to occur.  U.S.S.G. § 2B1.1, comment. n.3(A)(ii); *Bradley*, 644 F.3d at 1289.  A defendant's intent must often be inferred from circumstantial evidence.  *United States v. Willis*, 560 F.3d 1246, 1250 (11th Cir.2009).
>
> ….
>
> … As for Martin's argument that the total value of the intended loss is incorrect, there is no reversible error because even if Martin is correct, the alleged error that he cites benefits him, and therefore, does not affect his substantial rights.  [*United States v.] Rodriguez*, 398 F.3d [1291,] at 1298 [(11th Cir. 2005)].  As for Martin's arguments that the values for specific vehicles should not have been included in the lost determination, the evidence shows that Martin intended pecuniary harm through his conduct in connection with each of the vehicles, and the values used in the determination were a reasonable estimate of the intended loss.

*Martin*, 549 F. App'x at 890.

resulting prejudice, Martin is not entitled to relief based on this claim of ineffective assistance of counsel.

### 7.  *Failure to Challenge Leadership Role Enhancement*

In an amendment filed on July 13, 2016, Martin claims that Smith was ineffective for failing to challenge the leadership role enhancement applied to his sentence.  Doc. No. 35 at 1–2.

Martin received a four-level enhancement under U.S.S.G. § 3B1.1(a) for his leadership role in the offense.  *See* Doc. No. 11-5 at 24, ¶ 77.  Under § 3B1.1(a), the sentencing court must apply a four-level enhancement "[i]f the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  U.S.S.G. § 3B1.1(a).

This court agrees with the government (*see* Doc. No. 37 at 6–9) that Martin's claim concerning Smith's failure to challenge the leadership role enhancement is time-barred under 28 U.S.C. § 2255(f).[12]  The district court entered judgment in Martin's case on November 27, 2012.  *See* Doc. No. 11-11 at 1.  The Eleventh Circuit entered its decision in Martin's appeal on December 11, 2013.  *Martin v. United States*, 549 F. App'x 888 (11th Cir. 2013).  Martin thus had 90 days from December 11, 2013, in which to file a petition for writ of certiorari in the United States

---

[12] Section 2255(f) provides:

A 1-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of—

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting  the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

14

Supreme Court, if he so chose.  *See* Sup.Ct. R. 13(1) and (3); *Close v. United States*, 336 F.3d 1283, 1284–85 (11th Cir. 2003).  Martin filed no petition for certiorari, so, for purposes of § 2255(f), his conviction became final on March 11, 2014—90 days after December 11, 2013.  *See* 28 U.S.C. §2255(f)(1) (a § 2255 motion must be filed within one year from the date on which the judgment of conviction becomes final).  Under § 2255(f)(1), Martin had until March 11, 2015, to assert his claims for collateral relief in this court.  Although his § 2255 motion was timely filed on July 1, 2014, Martin did not assert his claim concerning Smith's failure to challenge the leadership role enhancement until July 13, 2016, when he raised the claim in an amendment to the § 2255 motion.  Doc. No. 35.  Therefore, the claim was presented over 16 months after the one-year limitation period in § 2255(f) expired.

For Martin's new claim to be timely, and therefore subject to review, it must "relate back" to a claim in his timely § 2255 motion under Federal Rule of Civil Procedure 15(c).  *See Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).  Rule 15(c) provides, in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when ... the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading.

Fed .R. Civ. P. 15(c).

To "relate back" under Rule 15(c), an otherwise untimely § 2255 claim "must have more in common with the timely filed claim than the mere fact that they arose out of the same trial and sentencing proceedings."  *Davenport*, 217 F.3d at 1344; *accord United States v. Hicks*, 283 F.3d 380, 388 (D.C. Cir. 2002); *Rodriguez v. United States*, 286 F.3d 972, 981 (7th Cir. 2002); United States v. Pittman, 209 F.3d 314, 317-18 (4th Cir. 2000); *United States v. Duffus*, 174 F.3d 333, 336-38 (3rd Cir. 1999); *United States v. Craycraft,* 167 F.3d 451, 456-58 (8th Cir. 1999).  "[I]n order to relate back, the untimely claim must have arisen from the same set of facts as the timely

filed claim, not from separate conduct or a separate occurrence in both time and type." *Davenport*, 217 F.3d at 1344; *accord Hicks*, 283 F.3d at 388 ("both time and type") *Rodriguez*, 286 F.3d at 981 ("same set of facts" and "both time and type"); *Pittman*, 209 F.3d at 318 ("both time and type"); *Duffus*, 174 F.3d at 337 ("same set of facts"); *Craycraft*, 167 F.3d at 457 ("same set of facts" and "both time and type").

"An untimely amendment to a § 2255 motion which, by way of additional facts, clarifies or amplifies a claim or theory in the original motion may, in the district court's discretion, relate back to the date of the original motion *if and only if ... the proposed amendment does not seek to add a new claim or to insert a new theory into the case*." *Woodward v. Williams*, 263 F.3d 1135, 1142 (10th Cir. 2001) (emphasis in original) (citation omitted); *see also Rodriguez*, 286 F.3d at 981 ("[T]hese circuits have been uniform in their denial of amendments that would add a new claim or theory of relief."). It is not sufficient for an untimely amendment merely to assert the same general type of legal claim as in the original § 2255 motion. *See Craycraft*, 167 F.3d at 456–57 (an untimely claim of ineffective assistance of counsel for not filing an appeal did not relate back to timely ineffective assistance claims for not pursuing a downward departure, not raising an objection at trial, and not challenging a prior conviction, as counsel's failure to file appeal was "a separate occurrence in both time and type" from failure to pursue a downward departure or to object at trial); *Duffus*, 174 F.3d at 336 (claim of ineffective assistance for failure to move to suppress evidence did not relate back to claim of ineffective assistance on appeal).

The new claim of ineffective assistance of counsel asserted in Martin's amendment does not relate back to any of the claims in his timely § 2255 motion. In the § 2255 motion, Martin raises no issues concerning his counsel's failure to pursue an objection to the leadership role enhancement. His new claim involves separate conduct by counsel at sentencing and inserts a new

theory of relief into this collateral proceeding.  *See* Fed.R.Civ.P. 15(c).  Therefore, Martin's new claim is time-barred by § 2255's one-year limitation period.[13]

In any event, even if the claim were not time-barred, Martin cannot show he was prejudiced by Smith's failure to challenge the leadership role enhancement applied to his sentence, because the district court's determination that the enhancement should be applied was supported by the record.  As outlined by the government in its sentencing memorandum:

> Martin participated in a large-scale fraud scheme involving various other individuals from whom he obtained stolen vehicles (of course, Martin also stole some vehicles himself, such as the Cadillac Escalade stolen by Martin and Chavonne McLeod from a rental car agency).  In addition to the other individuals involved in car theft, Martin also solicited involvement in his crimes by his wife Audrey Martin and his girlfriend Chavonne McLeod.  Finally, Martin furthermore used Shirley Shabazz to obtain fraudulent titles to numerous vehicles.  Because Martin's fraud scheme involved five or more participants and because Martin served as an organizer and leader in the scheme (actually orchestrating much of it), the 4-level enhancement under U.S.S.G. § 3B1.1(a) should be applied in calculation his Guidelines range.

Doc. No. 11-13 at at 4.  The facts set out in Martin's PSI also reflect that he was an organizer or leader in the conspiracy.  *See* Doc. No. 11-15 at 6–22, ¶¶ 12–64.  Because there was ample evidence that Martin had the leadership role in criminal activity involving five or more participants, there was no basis for Smith to pursue an objection to application of the § 3B1.1(a) enhancement.  Martin is not entitled to any relief on this claim.

### 8.  *Restitution Amount*

Finally, in an amendment filed on March 30, 2016, Martin contends that Smith rendered ineffective assistance of counsel by failing to object to the restitution amount Martin was ordered to pay, because one of the automobiles stolen during the conspiracy was recovered by its owner,

---

[13] Martin does not assert that his new claim falls within the purview of § 2255(f)(2), (3), or (4) and presents no basis for applying equitable tolling regarding the new claim.

the Hertz Corporation, and therefore the value of the vehicle should not have been included in the restitution amount.  *See* Doc. No. 26 at 1–2; Doc. No. 27; Doc. No. 33.

The district court's order of restitution rendered Martin jointly and severally liable with his coconspirators to pay restitution totaling $170,503.31 to Alfa Insurance, Motors Insurance Corporation, and the Hertz Corporation.  Doc. No. 11-14 at 26–27; Doc. No. 11-15 at 5–8.  Of that amount, $47,354.82 was ordered to be paid to the Hertz Corporation, based on the value of a burgundy 2007 Chevrolet Corvette that Martin stole after renting the car from a Hertz Rental Car facility in Orlando, Florida, by having the vehicle towed to his Montgomery, Alabama residence instead of returning it to the rental facility.  Doc. No. 11-14 at 27; Doc. No. 11-15 at 5; Doc. No. 11-5 at 18, ¶ 58.

Although the value of the burgundy 2007 Corvette was included in the restitution amount Martin was ordered to pay, evidence submitted by Martin in support of his amendment to the § 2255 motion reflects that Montgomery Police recovered the Corvette at Martin's residence six days after it was stolen and then had the vehicle towed to a wrecker company in Montgomery, after which (and before sentencing) it was recovered by the Hertz Corporation.  *See* Doc. No. 27-1 at 1–4; Doc. No. 33-1 at 1; Doc. No. 11-5 at 18, ¶ 58.  Evidence indicates that Hertz subsequently sold the Corvette, with the difference in the value of vehicle when stolen and the sale price coming to $1,218.33.  Doc. No. 33-1 at 1.  That difference—over $46,000 less than the amount of restitution Martin was ordered to pay to the Hertz Corporation—is the amount of loss Martin says he caused to the Hertz Corporation by his unlawful conduct and, accordingly, the amount of restitution he says he should have to pay to the Hertz Corporation.  Doc. No. 33 at 1–2.

Restitution is limited to actual loss, which a defendant is then responsible for paying back. *See United States v. Liss*, 265 F.3d 1220, 1231 (11th Cir. 2001) ("An award of restitution must be

based on the amount of loss actually caused by the defendant's conduct."). Here, the government concedes that the burgundy 2007 Corvette was recovered by the Hertz Corporation before sentencing and that, consequently, Martin was ordered to pay restitution to Hertz far in excess of the amount of actual loss the corporation sustained because of his criminal conduct. Doc. No. 34 at 2–5, 8–11. Additionally, the government concedes that had Smith conducted a reasonable inquiry into the matter at the time of sentencing, he was likely to have discovered that the vehicle had been recovered by Hertz, whereupon counsel could then have presented a successful objection to the part of the restitution order obligating Martin to pay $47,354.82 to Hertz. *Id.* at 8–11. Because of these circumstances, the government agrees with Martin's contention that Smith rendered ineffective assistance of counsel and contends that the restitution order should be modified to reduce Martin's restitution obligation to Hertz from $47,354.82, as originally ordered, to $1,218.33, the difference in the value of vehicle when stolen and its selling price after it was recovered by Hertz.[14] *Id.*

Although it appears to the undersigned—in light of the Hertz Corporation's evident recovery of the burgundy 2007 Corvette before sentencing—that the restitution order indeed obligated Martin to pay restitution to Hertz far in excess of the amount of actual loss the corporation sustained because of his criminal conduct, a § 2255 motion may not be utilized by a person in federal custody to attack the restitution portion of his sentence. *See Mamone v. United States*, 559 F.3d 1209, 1211 (11th Cir. 2009). In *Mamone*, the Eleventh Circuit held that § 2255 is an inappropriate vehicle for challenging the restitution part of a sentence, regardless of whether the claim is coupled with one seeking release from custody. *Id*. at 1210–11. The Court reasoned:

> Our holding in *Blaik [v. United States*, 161 F.3d 1341 (11th Cir. 1998], … supports our conclusion that Mamone cannot utilize § 2255 to challenge his restitution. *See*

---

[14] In conceding the merit of Martin's claim, the government also recognizes the untimeliness of Martin's claim but expressly waives any statute of limitations defense to the claim. Doc. No. 34 at 5–8.

> *Blaik*, 161 F.3d at 1343 (holding that "§ 2255 cannot be utilized by a federal
> prisoner who challenges only the restitution portion of his sentence"). In *Blaik*, we
> also noted that granting a restitution reduction in a § 2255 motion would be taking
> an action clearly not authorized by the statute's language. *Id*. at 1342; 28 U.S.C. §
> 2255(a). This same reasoning applies here. The plain language of the statute
> indicates § 2255 applies to "a prisoner in custody ... claiming the right to be
> released." 28 U.S.C. § 2255. As the Ninth Circuit determined in [*United States v.]
> Thiele*, [314 F.3d 399 (9th Cir. 2002),] "[n]on-cognizable claims do not morph into
> cognizable ones by osmosis." 314 F.3d at 402. We agree, and conclude the
> presence of a cognizable claim against Mamone's custodial punishment does not
> make his non-cognizable claims more amenable to our review.

559 F.3d at 1211.

Because relief from restitution is a remedy not authorized by § 2255, this court cannot grant

Martin relief on this claim in his § 2255 motion.

### III.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the 28 U.S.C. §

2255 motion filed by Martin be DENIED and this case DISMISSED with prejudice.

It is further

ORDERED that the parties shall file any objections to this Recommendation or before

March 14, 2017. A party must specifically identify the factual findings and legal conclusions in

the Recommendation to which objection is made; frivolous, conclusive, or general objections will

not be considered. Failure to file written objections to the Magistrate Judge's findings and

recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) will bar a party from

a *de novo* determination by the District Court of legal and factual issues covered in the

Recommendation and waives the right of the party to challenge on appeal the District Court's order

based on unobjected-to factual and legal conclusions accepted or adopted by the District Court

except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th

Cir. 1982); 11th Cir. R. 3-1.  *See Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

    Done this 28th day of February, 2017.


                     /s/  Wallace Capel, Jr.
                     UNITED STATES MAGISTRATE JUDGE

.